*In re* FOX'S ESTATE.[1]

1. TAXATION—INHERITANCE TAX—NATURE—STATUTES—VALIDITY.
    An inheritance or succession tax is not a tax upon property,
    but upon the right or privilege of receiving property by in-
    heritance, and constitutional provisions requiring equality
    and uniformity of property taxation do not apply to statutes
    by which inheritance taxes are imposed.

2. CONSTITUTIONAL LAW— EQUAL PROTECTION OF LAWS — CONSTI-
  TUTIONAL PROVISIONS—CONSTRUCTION.
    The principle that "all men are equal before the law, and that
    life, liberty, and property are secure to all alike," upon which
    all State Constitutions are founded, is no broader in its scope
    and effect than the similar provisions of the Fourteenth
    Amendment, and no law which can be sustained under the
    provisions of the Federal Constitution can be said, in those
    respects, to violate our Constitution.

3. TAXATION — INHERITANCE TAX — STATUTES — VALIDITY — CLASS
  LEGISLATION.
    Sections 1 and 2 of the inheritance tax law of 1903 (Act No. 195),
    which exempt from taxation transfers of personal property
    to lineal heirs where the value of the property so transferred
    is less than $2,000, and which tax the entire transfer of such
    property to such heirs without any exemption where its value is
    $2,000 or more, are not unconstitutional, as making an unjust
    discrimination, but are founded on a legal and proper classi-
    fication, the members of each class being treated alike.

4. SAME — STATUTES — CONSTRUCTION — ADOPTION FROM SISTER
  STATE.
    In determining the question whether, in ascertaining and fix-
    ing the amount of the inheritance tax, the debts of the testa-
    tor secured by mortgages upon his real estate should be de-
    ducted from the personal property, the decisions of the New
    York courts are controlling.

5. SAME—COMPUTATION OF TAX—MORTGAGES ON REALTY—DEDUC-
  TION.
    In computing the amount of an inheritance tax, the value of
    a mortgage upon the real estate must be deducted from the

───────────────
[1] Rehearing pending.

value of the real estate, and not from the personal estate, notwithstanding the mortgage debt is presented as a claim against the estate and paid from the personalty.

Case made from Kent; Sessions, J., presiding. Submitted April 13, 1908. (Docket No. 59.) Decided September 10, 1908.

John F. Wilkinson, deputy auditor general, appealed to the circuit court from an order of the probate court determining the amount of inheritance tax due the State from the estate of E. Crofton Fox, deceased. There was judgment overruling the order of the probate court, and the estate appeals. Affirmed.

*Kleinhans & Knappen*, for appellant.

*John E. Bird*, Attorney General, and *Thomas Ambrose Lawler*, Assistant Attorney General, for appellee.

McALVAY, J. An appeal from an order determining the amount of inheritance tax due the State from this estate made by the probate court for Kent county, was taken to the circuit court of said county by. the auditor general acting for and in behalf of the State. There is no dispute as to the facts in the case. They were agreed to by stipulation, as follows:

"It is hereby stipulated that the issues in this cause are set forth in the ˈpleadings filed herein, and that the following facts, based upon the record and files which are made a part hereof, shall be taken as true, and that neither party hereto shall be required to prove any of the said matters otherwise than by this stipulation, namely:

"E. Crofton Fox, a resident of the city of Grand Rapids, State of Michigan, died on March 1, 1904. By his last will and testament, which was duly admitted to probate, he devised and bequeathed to Elizabeth B. Nichols, his sister-in-law, the sum of ten thousand dollars ($10,000); to Butterworth Hospital, a charitable corporation, two thousand dollars ($2,000); and the balance of his estate to his brother, Charles Fox, a considerable portion of which latter.bequest being left in trust for the benefit of the said

Charles Fox, instead of being given to him absolutely. His property was inventoried after his death as follows:

"Real estate _____ $196,230 00
Personal estate _____ 121,170 65
After the inventory personal property was
found and added to the estate to the
amount of _____ 1,489 13

"The court allowed the following expenses and claims, viz. :

"Funeral expenses _____ $220 05
Administration expenses _____ 1,249 68
Claims _____ 80,757 56

" Among the claims allowed was a note for fifty thousand dollars ($50,000) made by the said deceased to the Michigan Trust Company of Grand Rapids, Mich., dated May 31, 1895, with interest at 5 per cent., and secured by a mortgage on certain of the real estate of said deceased in the city of Grand Rapids, which said real estate passed into the trust created by the will for the benefit of the said brother, Charles Fox. The Michigan Trust Company filed a claim for this note, and it was allowed by the probate court at the sum of $50,568.75.

"The probate court on July 11, 1905, determined the inheritance tax upon the net value of the personal estate, which he found to be $40,432.49, after deducting all of the claims and expenses above mentioned, as follows:

"Charles Fox (brother), real estate _____ $196,330 00
No tax.
Charles Fox    (brother), personal estate _____ 28,432 39
Deduction _____ 5,000 00
                                                 _____
                                                 $23,432 39
Tax at 1 per cent. _____ _____ 234 32
Elizabeth B. Nichols (sister-in-law)
Personal estate _____ 10,000 00
Tax at 5 per cent. _____ 500 00
Butterworth Hospital, personal estate _____ 2,000 00
Exempt corporation—no tax."

Said cause came on to be tried in the circuit court for the county of Kent, before the Honorable Clarence W. Sessions, circuit judge, presiding, and was tried by the court upon the stipulation as to facts without a jury.

Later the court filed its conclusions of law in writing, upon which a judgment was entered against the estate. The estate filed exceptions to the conclusions of law of the court, and upon these exceptions errors were duly assigned. A reversal of the judgment is asked on the ground of such errors claimed to have been committed by the court.

The probate court held that sections 1 and 2 of Act No. 195, Pub. Acts 1903, were unconstitutional and void, for the reason "that they deny to persons the equal protection of the laws, and provide unjust discrimination instead of a uniform rule of taxation, contrary to the provisions of the Constitution of the United States and the State of Michigan." He therefore made his determination of the amount of the inheritance tax due to the State from the estate under the law of 1899, to which the act of 1903 above referred to was an amendment. The probate court also held that the value of the real estate mortgage should be deducted from the clear market value of the personal property, instead of deducting the same from the value of the real estate. Upon both propositions the circuit court reversed the order and decree of the probate court. For the convenience of the profession we quote from the statute of 1903 the amended sections 1 and 2, the validity of which is challenged upon constitutional grounds:

" SECTION 1. That after the passage of this act a tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of one hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property, in the following cases:

"*First.* When the transfer is by will or by the intestate laws of this State from any person dying seised or possessed of the property while a resident of this State;

"*Second.* When the transfer is by will or intestate law of property within the State, and the decedent was a nonresident of the State at the time of his death;

"*Third.* When the transfer is of property made by a

resident or by nonresident, when such nonresident's property is within this State, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect, in possession or enjoyment at or after such death. Such tax shall also be imposed when any such person or corporation becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act. Such tax shall be at the rate of five per cent. upon the clear market value of such property, except as otherwise prescribed in the next section.

"Sec. 2. When the property or any beneficial interest therein passes by any such transfer to or for the use of one or more of the following named persons: Father, mother, husband, wife, child, brother, sister, wife or widow of a son, or the husband of a daughter, or to or for the use of any child or children adopted as such in conformity with the laws of this State of the decedent, grantor, donor, or vendor, or to or for the use of any persons to whom any such decedent, grantor, donor, or vendor, for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent, or to or for the use of any lineal descendant of such decedent, grantor, donor, or vendor, such transfer of property shall not be taxable under this act, unless it is personal property of the clear market value of two thousand dollars or over, in which case the entire transfer shall be taxed under this act at the rate of one per cent. upon the clear market value thereof. The exemptions of sections one and two of this act shall apply and be granted to each beneficiary's interest therein, and not to the entire estate of a decedent."

The learned trial judge, in his conclusions of law filed in the case, has fully discussed both questions involved, and it appearing to this court that his conclusions of law are correct and supported by the clear weight of the authorities, and that he has distinguished this case from the cases cited and relied upon by the appellant, we adopt such conclusions as the opinion of this court:

"The facts in this case have been agreed upon and are set forth in a written stipulation which has been filed, and need not be herein again stated. There are two questions of law to be determined:

"*First.* Are the provisions of sections 1 and 2 of the inheritance tax law (Act No. 195, Pub. Acts 1903) unconstitutional? and,

"*Second.* In computing and fixing the amount of the inheritance tax, shall the value of a mortgage upon real estate be deducted from the value of such real estate, or shall the amount of the debt secured by such mortgage be deducted from the value of the personal estate?

"1. It is now settled beyond controversy that an inheritance or succession tax is not a tax upon property, but is a tax upon the right or privilege of receiving property by inheritance, and that constitutional provisions requiring equality and uniformity of property taxation do not apply to statutes under and by which inheritance taxes are imposed. Therefore, in the determination of the question under consideration, the provisions of our State Constitution requiring a uniform rate of taxation of property can be disregarded. Counsel for appellee have not pointed out any specific provision of our State Constitution, and I apprehend none can be found, which requires either uniformity or equity in the taxation of the privilege of receiving property by inheritance. But every Constitution in the Union is founded upon the principle ' that all men are equal before the law, and that life, liberty, and property are secured to all alike.' Such principle, however, is no broader in its scope and effect than the provisions of the Fourteenth Amendment of the United States Constitution, and no law which can be sustained under such provisions of the Federal Constitution can be held, in those respects, to violate either the letter or the spirit of our State Constitution.

" Counsel for appellee contend that the provision of the act of 1903 which exempts from taxation transfers of personal property to lineal heirs where the value of the property so transferred is less than $2,000, and which taxes the entire transfer of such property to such heirs without any exemption where its value is $2,000 or more, is not a proper and legal classification, but, on the contrary, is an unjust discrimination.

" Counsel for appellant contends that the classification made by this provision of the statute is a proper and legal one, and that the law operates uniformly upon all within the same class, and thus fulfills the requirements of both the Federal and State Constitutions.

" This statute creates two main classes; the first being composed of lineal heirs and near relatives of the testator

or intestate, and the second of distant relatives and strangers. The former is again divided into two subclasses dependent upon the amount of the estate received. Classifications based upon relationship and also upon the amount transferred have been sustained in the Federal courts and in our own and many other State courts. If the constituents of each class or subclass are affected alike by the statute, the rule of equality prescribed by constitutional provisions and defined by the courts in construing those provisions is satisfied. Tested by this rule, it is evident that the statute under consideration meets the constitutional requirements. The members of each class are treated alike; that is to say, all lineal heirs who inherit less than $2,000 are exempt, and all lineal heirs who inherit personal property of the value of $2,000 or over are taxed 1 per cent. of such value for the privilege of receiving such inheritance. The person who inherits less than $2,000 is not in the same class with the person who inherits $2,000 or over. Hence the rule requiring uniformity among members of the same class is not violated. There is equality within the classes, and that is all that is required. The fairness and justice of such a provision are matters for legislative, and not judicial, consideration.

"Moreover, there is no difference in principle between the statute under consideration and a statute imposing a progressive rate of taxation. In other words, there is no difference in principle between a statute which permits a person to receive an inheritance of less than $2,000 without taxation and requires him to pay a tax upon the transfer if the inheritance amounts to or exceeds $2,000, and a statute which imposes a tax at one rate upon the transfer of property of the value of less than $2,000 and a tax at another and larger rate upon the entire transfer of property of the value of $2,000 or more. The same inequality exists in the one case as in the other, and, if there is unjust discrimination in the one case, there is also in the other. The difference is one of degree, and not of principle. But classification based upon a progressive rate of taxation of inheritance has been sustained by many courts, including the Supreme Court of this State.

"The Illinois statute provides for a progressive rate of taxation on legacies to strangers to the blood of the testator as follows: On all legacies of $10,000 and less, 3 per cent.; on all legacies of over $10,000, and not exceeding $20,000, 4 per cent.; on all legacies of over $20,000, and

not exceeding $50,000, 5 per cent.; and on all legacies
over $50,000, 6 per cent. The validity of that statute has
been sustained by both the supreme court of the State of
Illinois and the Supreme Court of the United States. The
decision of the latter court has received the express ap-
proval of the Supreme Court of this State. In *Magoun*
v. *Savings Bank*, 170 U. S. 283, 300, the Supreme Court
of the United States said:

" ' It is said that the tax is not in proportion to the amount, but
varies with the amounts arbitrarily fixed, and hence that an inheri-
tance of $10,000 or less pays 3 per cent. and that one over $10,000
pays, not 3 per cent. on $10,000, and an increased percentage on the
excess over $10,000, but an increased percentage on the $10,000 as
well as on the excess; and it is said, as we have seen, that in con-
sequence one who is given a legacy of $10,001, by the deduction of
the tax receives $99.04 less than one who is given a legacy of $10,000.
But neither case can be said to be contrary to the rule of equality
of the Fourteenth Amendment. That rule does not require, as we
have seen, exact equality of taxation. It only requires that the
law imposing it shall operate on all alike, under the same circum-
stances. The tax is not on money. It is on the right to inherit,
and hence a condition of inheritance, and it may be graded accord-
ing to the value of that inheritance. The condition is not arbitrary
because it is determined by that value. It is not unequal in opera-
tion because it does not levy the same percentage on every dollar—
does not fail to treat " all alike under like circumstances and condi-
tions both in the privilege conferred and the liabilities imposed." ' "

"See, also, *Knowlton* v. *Moore*, 178 U. S. 41; *Camp-
bell* v. *California*, 200 U. S. 87; *Union Trust Co.* v.
*Wayne Probate Judge*, 125 Mich. 487; *Stellwagen* v.
*Wayne Probate Judge*, 130 Mich. 166; *Kochersperger*
v. *Drake*, 167 Ill. 122 (41 L. R. A. 446); *Appeal of Net-
tleton*, 76 Conn. 235; *In re Magnes' Estate*, 32 Colo. 527;
*State* v. *Alston*, 94 Tenn. 674 (28 L. R. A. 178).

"Counsel for appellee cite and rely upon the following
authorities as sustaining their contention: *Black* v. *State*,
113 Wis. 205; *State* v. *Ferris*, 53 Ohio St. 314 (30 L. R.
A. 218); *Drew* v. *Tifft*, 79 Minn. 187 (47 L. R. A. 525);
*State, ex rel. Frye*, v. *Bazille*, 87 Minn. 503.

"Because of the peculiar provisions of their respective
constitutions, the courts of Minnesota, New Hampshire,
Ohio, and Wisconsin are not in entire harmony in their
decisions with the Federal and other State courts, includ-
ing our own. As was said by the supreme court of Min-
nesota in the *Drew Case:*

" 'Minnesota is, so far as we are advised, the only State whose constitution in express terms limits the power of the legislature in the laying of an inheritance tax.'

" And, again:

" 'We therefore hold that by virtue of section 1, art. 9, of our State constitution, as it now stands, the requirement of equality in taxation applies to inheritance taxes exactly as it does to taxes on property, except as expressly provided in the last proviso thereto. In reaching this conclusion we have not overlooked the fact that it is contrary to the great weight of authority in other States. But our constitution in this particular is unique, and its mandate is so clearly expressed as to leave no doubt as to its meaning; hence the decisions of the courts of other States are not in point.'

" In the recent case of *State, ex rel. Foot*, v. *Bazille*, 97 Minn. 11 (6 L. R. A. [N. S.] 732), the same court has explained and somewhat modified its former holdings. The same may be said of the Wisconsin and Ohio courts in their recent utterances: *Nunnemacher* v. *State*, 129 Wis. 190 (9 L. R. A. [N. S.] 121); *State* v. *Guilbert*, 70 Ohio St. 229.

" But, aside from differences in constitutional provisions upon which the decisions of the several courts are founded and by which they are controlled, the authorities upon which counsel for the estate rely do not sustain their contention. The precise question here involved was not determined in any of the cases cited. In each of these cases the power of the legislature to classify the beneficiaries of estates of decedents, both according to relationship and according to the value of the property received, is upheld. The right to create exemptions is conceded, and the power to provide for a progressive rate of taxation of inheritances is sustained. The courts agree that the constitutional rule of equality and uniformity is complied with if all members of the same class are treated alike. The differences among courts arise only in the application of that rule. In the *Black Case* the supreme court of Wisconsin held that the inheritance tax law of that State was unconstitutional, 'for the reason that it provided for unlawful discrimination, in that a beneficiary receiving a legacy or inheritance from an estate under $10,000 paid no tax, while a beneficiary standing in exactly the same relation to the decedent receiving a legacy or inheritance of the same amount from an estate exceeding $10,000 was

obliged to pay a tax.' This discrimination which the court there held to be unlawful arose from the fact that the exemption of $10,000 allowed by that statute applied to the whole estate, and not to the share of each beneficiary. The same line of reasoning, if it had been adopted, would have compelled our Supreme Court to find that the Michigan inheritance tax law of 1899 was unconstitutional, and would have compelled the Supreme Court of the United States to declare invalid the inheritance tax laws of Illinois and New York, as well as the Federal revenue act of like character. However, no such objection can be urged against the statute now under consideration. The Michigan law of 1903 provides in express terms that the exemptions shall apply and be granted to each beneficiary's interest in the estate, and not to the entire estate. All persons standing in the same degree of relationship to the decedent and receiving the same amount are treated alike. There is thus no ground for claiming that this law provides for any discrimination between members of the same class of beneficiaries even under the holdings of the Wisconsin and Ohio courts.

"2. In determining the question of whether or not, in ascertaining and fixing the amount of the tax, the debts of the testator secured by mortgages upon his real estate should be deducted from the personal property, the decisions of the New York courts are controlling, unless such decisions are made inapplicable by reason of the existence of other statutes of that State. The language of the supreme court of New York in *Re Sutton's Estate*, 3 App. Div. (N. Y.) 208, 212, is peculiarly applicable to the case at bar:

"'It is of no importance to the executor or beneficiaries, except for the purpose of determining the tax, from which fund the mortgages shall be paid; and they cannot be permitted to be paid from the personal estate for the sole purpose of increasing the exemption of real estate, and decreasing the amount of the tax to be paid. The testator has transferred his whole estate as a single fund, for the use and benefit of his children. In holding that, for the purpose of determining the tax, the real estate owned by the testator at the time of his death must be treated as such, we could not extend that exemption beyond the value of the testator's interest therein. It was such interest only that was transferred, and which will be held for the use of the beneficiaries, and such only that can be held to be exempt.'

"It is urged, however, that the holdings of the New York courts cannot be of binding effect here because they are based upon a statute of that State which requires the heir or devisee of real estate incumbered by mortgage to pay such mortgage out of his own property without resorting to the executor or administrator of his ancestor, unless there be an express direction in the will of such testator that such mortgage shall be otherwise paid. But the courts of that State have determined the question adversely to this contention, both independently of the statute and in cases where the will of the testator expressly directed the payment of the mortgage debt out of his personal estate. In *Re Livingston*, 1 App. Div. (N. Y.) 568, the court said:

" ' Whether treated under the common-law rule, or under the statute, the practical question is: Shall the heir or devisee satisfy the mortgage, or shall that burden be borne by others interested in the personalty ? No such question can arise when the real and personal property are in the same hands. If the legatee chooses to apply his personalty to the satisfaction of the mortgage, he benefits his real estate pro tanto. He neither gains nor loses by its application or nonapplication. The payment of the mortgage would amount substantially to an investment of the personalty in the real estate. * * * The tax was imposed by the statute upon the "transfer" of the property. (Laws 1892, chap. 399, § 3.) That transfer was effected by the death of the testator, and the tax became due and payable immediately. The subsequent act of the executor had no greater effect to reduce the taxable personalty than would the taking of the money by the beneficiary out of one pocket and putting it into the other.'

"In *Re Offerman's Estate*, 25 App. Div. (N. Y.) 94, the testator specifically directed his executor to pay out of his personal estate any and all mortgages upon his real estate, yet, in fixing the amount of the transfer tax upon personal property, the court refused to permit the deduction of the debts secured by mortgages upon real estate.

"*In re Pullman's Estate*, 46 App. Div. (N. Y.) 574, and *In re Burden's Estate*, 95 N. Y. Supp. 972, are instructive cases, and from them the rule may be deduced that, where debts of the decedent are secured by mortgage or pledge of nontaxable property, such debts cannot be offset against personal property taxable under the inheritance or transfer tax law.

"It follows that the probate judge was in error in de-

termining that sections 1 and 2 of Act No. 195 of the Public Acts of 1903 are unconstitutional, and that the transfer of $5,000 of the personal property in said estate is exempt from any inheritance tax, and also in determining the clear market value of taxable transfers in said estate by deducting the real estate mortgage valued at $50,568.75 from the value of the personal property instead of from the value of the real property in said estate. The order of the probate judge will be reversed, and judgment entered imposing a transfer tax of 1 per cent. upon such amounts of $5,000 and $50,568.75 in addition to the amounts of such tax as fixed and determined by the probate judge. The order and judgment of this court will be certified to the probate court in the manner provided by the statute."

The order and judgment of the circuit court is affirmed.

GRANT, C. J., and BLAIR, MONTGOMERY, and CARPENTER, JJ., concurred.