In the Matter of the Estate of JOHN C. HUBINGER, Deceased, CHARLES F. WEISMANN, Executor, VIOLA M. HUBINGER, Claimant, Appellant, v. CHARLES F. WEISMANN, Executor under Will of JOHN C. HUBINGER, Deceased, Appellee.

**Husband and wife:** ANTENUPTIAL CONTRACT: CONSTRUCTION.  Insofar as a contract is ambiguous the situation and circumstances of the parties may be shown and considered in connection with its construction.  In this proceeding to construe an antenuptial contract by which the husband relinquished all interest in his wife's estate, and which limited her claim upon his estate to a specified sum to be in full of all her demands thereon of every kind, and which gave each party full control and disposition of their separate property during marriage, it is held that the effect of the provision limiting the wife's interest in the husband's estate was to secure to the children of the husband by a former marriage the body of his estate, and did not create in the wife an absolute right to such sum or enlarge her interest in the estate.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR., Judge.

TUESDAY, MARCH 7, 1911.

ACTION on a claim of $50,000 against the executor

of J. C. Hubinger, deceased. Upon a hearing the claim was denied, and the plaintiff appeals.—*Affirmed.*

*Hughes & McCoid,* for appellant.

*William C. Howell,* for appellee.

EVANS, J.—The claimant is the widow of the deceased. Her claim purports to be based on the provision of an antenuptial contract. The contract was duly executed on June 3, 1896, and is as follows:

Whereas, John C. Hubinger of the city of Keokuk, county of Lee and state of Iowa, and Viola M. Schumacher of the city of New Orleans, parish of Orleans and state of Louisiana, contemplate entering into the marriage relations; and, whereas, said John C. Hubinger has a large estate and has children by a former marriage; and, whereas, said Viola M. Schumacher is possessed of property in her own right, and has a child by a former marriage; and, whereas, the said parties to this contract desire to proscribe, limit and determine the interest and control which each of said parties may have in the estate of the other party during the marriage relations, or should same be determined by death or legal proceedings: Therefore the following contract and agreement is entered into:

Know all men by these presents: That we, John C. Hubinger of the city of Keokuk, county of Lee, state of Iowa, and Viola M. Schumacher of the city of New Orleans, Parish of Orleans, and state of Louisiana, being about to enter into the marriage relations, do hereby agree each one with the other one:

(1) That in the event of the death of the said Viola M. Schumacher during the continuance of said marriage relations, said John C. Hubinger surviving her, then John C. Hubinger shall receive from the estate of said Viola M. Schumacher the sum of five ($5.00) dollars, such sum when paid by the executors or administrators of the estate of said Viola M. Schumacher to be in full for all claims and demands of every kind and character which the said John C. Hubinger shall have against the estate of said

Viola M. Schumacher, same to cover all rights of dower, statutory right, all allowance for support and all right of inheritance, the entire interest of said John C. Hubinger in the estate of said Viola M. Schumacher to be limited to the said claim of five ($5.00) dollars. The specific enumeration in the foregoing paragraph is not to limit the general clause herein.

(2) In consideration of the terms and conditions of this contract, it is agreed that should Viola M. Schumacher survive said John C. Hubinger and should John C. Hubinger die during the existence of the marriage relations between the parties hereto, the said Viola M. Schumacher agrees for herself that her claim upon the estate of John C. Hubinger shall be limited to fifty thousand dollars ($50,000.00) and a payment by the executors or the administrators of the estate of said John C. Hubinger to the said Viola M. Schumacher, her heirs or legal representatives, of the sum of fifty thousand ($50,000.00) dollars shall be in full for all claims and demands of every kind and character which the said Viola M. Schumacher shall be entitled to as the wife or widow of said John C. Hubinger against his said estate. This payment to be a satisfaction of all claims for dower, statutory right, right of support, right of inheritance and homestead right, and every claim of every kind or character. The specific enumeration herein is not to limit the general terms herein used.

(3) During the continuance of the marriage relations herein contemplated each of the parties hereto are to have the full, complete and perfect right to own, control and dispose of their separate property the same as if the marriage relations did not exist, and each of said parties are to have the full right to dispose of and sell any and all real or personal property now or hereafter owned by each of said parties without the other party joining, and said transfer by either of the parties to this contract shall convey the same title that said transfer would convey had the marriage relations not existed. This contract limits the right of either party to participate in the estate of the other whether the marriage relation is determined by death or legal proceedings.

(4) The purpose and intent of this agreement is to

fully, perfectly and completely define and limit the claims and demands which each of the parties to this contract shall have against the estate of the other. Should either party die during the pendency of this contract, or should the contract be determined by legal proceedings, the claims herein stipulated and defined shall be the limit which either party may have against the estate of the party so dying, or the contract being terminated as above specified, during the continuance of the marriage contract.

(5) This agreement is made and entered into with full knowledge upon the part of the parties hereto, that each of the parties have a separate estate, and no claim or demand can be predicated upon the fact that there has been any misrepresentation or concealment as to the amount and condition of said separate estate, it being expressly agreed and understood that each of the parties at this time consider the amount hereinabove fixed to be sufficient participation in the estate of the other, and I, Viola M. Schumacher, consider the provisions herein made for me sufficient for my support and maintenance. Each of said parties stating that they have a sufficient general knowledge of the condition of the estate of the other to justify them in making and entering into this said agreement.

It is the contention of the appellant that under the second paragraph of the foregoing contract an absolute liability was created in favor of the widow against the estate of her husband for the full sum of $50,000. The contention of the appellee is that the intent of such paragraph was to limit the interest the claimant as widow in the estate of her husband to the sum named, and not to enlarge her interest therein in any event. An agreed statement of facts includes the following stipulations:

Second. That John C. Hubinger and Viola M. Schumacher had been acquainted for about six months prior to said marriage. That the said Viola M. Schumacher had met the late John C. Hubinger in New Orleans, La., about December, 1895, and then the said John C. Hubinger came to New Orleans about March thereafter with his

mother and sister and remained about two weeks, and
when he returned to Keokuk the said Viola M. Schumacher
came with them and remained in Keokuk visiting the said
mother and sister for about two weeks.   The said Viola
M. Schumacher and her daughter, Evelyn Schumacher,
then about six years old, went from Keokuk to Nashville,
Tenn., where they remained until said marriage occurred
on the 3d day of June, 1896, and during the time the
said Viola M. Schumacher was in Nashville, Tenn., the
said John C. Hubinger visited her.

Third. That at the time of said marriage John C.
Hubinger was a widower about 44 years of age.   He had
two minor children living at that time, J. Carl Hubinger,
who was about 8 years of age, and Marguerite Hubinger,
who was about six years of age.   Both of Mr. Hubinger's
parents were living, and he contributed to their support.
They were about 67 years of age at the time of said mar-
riage, but said parents were not dependent upon him for
their support.

Fourth. That Viola M. Schumacher had been divorced
from her husband, ——— Schumacher, in 1893, and at
the time of said marriage with John C. Hubinger she
had one daughter Evelyn, then living.   At the time of said
marriage Viola M. Schumacher was about 30 years of age.

Fifth. Since the marriage of said parties one child
has been born, Harold C. Hubinger, who is now living and
about 9 years of age.   All of the above-mentioned children
are still living, and said Harold C. Hubinger is living
with said Viola M. Hubinger.

Sixth. At the time of said marriage the said John C.
Hubinger had three brothers and four sisters living, all of
whom, together with his parents, survive him.

Seventh. At the time of said marriage the said Viola
M. Schumacher had an estate in her own right to the sum
of about $2,000.   At the time of said marriage John C.
Hubinger was the owner of one-third of the capital stock
of the J. C. Hubinger Bros. Company, manufacturers of
Elastic Starch.   During several years preceding and suc-
ceeding said marriage he received an income from his
stock in said J. C. Hubinger Bros. Company amounting
to about the sum of $100,000 annually. . The said John
C. Hubinger was also the owner of the street railway sys-

tem and electric lighting plants in Keokuk, and was the owner of telephone plants in Keokuk, Burlington, Ft. Madison, and Muscatine, Iowa, and the toll lines connecting same. He was also the owner of a large amount of real estate and was estimated to be worth at the time of his marriage at about one-half million dollars.

Tenth. At the time of John C. Hubinger's death his fortune had diminished, and that after the payment of his debts his estate will probably not exceed a sum estimated from $35,000 to $50,000, and his estate consists largely in his homestead and vacant real estate in the city of Keokuk.

It will be observed from the foreging that at the time the contract was entered into the deceased was worth about a half million dollars; while at the time of his death his estate did not exceed $50,000.

The decisive question in the case is one of construction, viz.: Is the proviso that the claim of the wife "shall be limited to $50,000" equivalent to affirmative provision that such amount shall be paid to her? Counsel have not been able to cite us to any authorities directly in point. In so far as the contract may be deemed ambiguous, it is proper that we take into consideration for the purpose of its construction the situation and circumstances of the parties as disclosed by the stipulation of facts. *Jacobs v. Jacobs,* 42 Iowa, 600; *Ditson v. Ditson,* 85 Iowa, 276.

Each of the parties had an estate, and each had children by a former marriage. Taking the contract by its four corners, and reading it in the light of the circumstances surrounding the parties, we think it manifest therefrom that it was intended to protect the future interest of the children of each party in the estate of the parent. For a nominal consideration of $5, the husband renounced all claim to any part of the estate of the wife. The effect of this was to secure her entire estate to her own children in case her husband should outlive her. On her part she agreed that her claim in her husband's estate should be

limited to $50,000. The effect of this provision as it then appeared was to secure to the children of the husband the body of his estate. In construing such contract, the court will not wholly lose sight of the interests of the children. 21 Cyc. 1264-1270; *Payne v. Coles,* 1 Munf. (Va.) 373; *Kohl v. Frederick,* 115 Iowa, 517. Such interest of children will also be regarded in determining whether such a contract is reasonable and fair to the widow. *In re Devoe Estate,* 113 Iowa, 4-13; *Peet v. Peet,* 81 Iowa, 172; *Nesmith v. Platt,* 137 Iowa, 293-299.

It is our conclusion that the contract under consideration must be construed as a limitation upon the extent of the right of the widow in the estate of the deceased, and that it was not intended thereby to enlarge her interest in the estate to any extent. Some additional provisions were made for the widow by the will of the deceased, but we have no occasion to deal with these. Our conclusion is in harmony with that of the trial court, and its order is therefore *affirmed.*